# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3268
_____

United States of America

*Plaintiff - Appellee*

v.

Stephen Alan Macomber

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Nebraska - Omaha
_____

Submitted: May 14, 2013
Filed: June 17, 2013
_____

Before RILEY, Chief Judge, MELLOY and SHEPHERD, Circuit Judges.
_____

RILEY, Chief Judge.

On June 23, 2010, a federal grand jury in the District of Nebraska charged Stephen Macomber with (1) bank robbery, in violation of 18 U.S.C. § 2113(a); and (2) using and carrying a firearm during a bank robbery, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Macomber was transferred from a Kansas correctional facility, where he was imprisoned on state charges, to the District of Nebraska, to appear on the federal charges. After Macomber was transferred back to Kansas, he

moved to dismiss the indictment based on a violation of the Interstate Agreement on Detainers Act (IADA), 18 U.S.C. app. 2 § 1, et seq. The district court[1] determined the transfer violated the IADA and dismissed the federal indictment without prejudice. Macomber appeals, arguing the dismissal should have been with prejudice. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND

At his initial appearance and arraignment in the District of Nebraska on April 27, 2012, Macomber pled not guilty and advised the magistrate judge[2] he wished to represent himself. The magistrate judge appointed a federal public defender as standby counsel. Macomber informed the magistrate judge he wanted to remain in Nebraska, rather than being returned to Kansas. The magistrate judge then remanded Macomber to the custody of the United States Marshal Service.

On May 7, 2012, Macomber filed a pro se "Application for Temporary Restraining Order and Preliminary Injunction," in which he claimed the government was violating his constitutional rights by denying him "meaningful access to the [c]ourts." Macomber also asserted he "was involuntarily moved outside of the jurisdiction of the state of Kansas," where he had three "active criminal appeals." Macomber asked to be provided with certain "legal materials" relevant to these appeals, but did not specifically ask to be transferred back to Kansas.

The district court interpreted Macomber's motion as a request to be returned to Kansas, and on May 15, 2012, ordered the United States Marshal for the District

---

[1]The Honorable Laurie Smith Camp, Chief Judge, United States District Court for the District of Nebraska.

[2]The Honorable Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska.

of Nebraska to return Macomber to state custody in Kansas to facilitate Macomber's access to legal materials relevant to his Kansas appeals. After normal business hours on May 16, 2012, Macomber objected to the transfer and moved the district court to reconsider. Early in the morning of May 17, 2012, Macomber was transported to Kansas before the district court was able to review his objection.

On May 21, 2012, Macomber moved to dismiss the indictment, claiming the district court order violated the IADA, see 18 U.S.C. app. 2 § 2 art. IV(e) and § 9(1), by transferring him back to Kansas without an opportunity to object. At an evidentiary hearing on August 22, 2012, Macomber and his standby counsel conceded neither of them contacted the district court or the government to ask for a hearing on the day Macomber filed his objection to the transfer.

The district court concluded that its interpretation of Macomber's motion could be viewed as unreasonable, amounting to a violation of the IADA. See id. The district court then dismissed the indictment without prejudice. Macomber appeals, claiming the district court should have dismissed the indictment with prejudice.[3]

II.    **DISCUSSION**

Article IV § 2 of the IADA allows "a prosecutor who has lodged a detainer against a prisoner in another State [to] secure the prisoner's presence for disposition of the outstanding charges." United States v. Mauro, 436 U.S. 340, 351 (1978). If, however, the prisoner is "returned to the original place of imprisonment pursuant to Article V(e)" before there has been a trial on the indictment, "such indictment . . . shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." 18 U.S.C. app. 2 § 2 art. IV(e). Where,

---

[3]Macomber does not specifically argue, and we do not decide, whether a transfer in violation of the IADA may implicate any constitutional question.

-3-

as here, the United States is the receiving entity, "[n]otwithstanding any provision of the [IADA] to the contrary," the district court may dismiss the indictment "with or without prejudice."[4]  Id. § 9(1).

> In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: The seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice.

Id.

The district court dismissed the indictment without prejudice because (1) Macomber was charged with "serious offenses . . . that pose[d] a threat to society"; (2) the government was "in no way at fault" and had not committed any "wrongdoing or neglect"; and (3) Macomber would "not suffer any significant prejudice by virtue of the dismissal of the action being without prejudice" because Macomber would be incarcerated "for a very long time" based on his Kansas state convictions and dismissal without prejudice would not be "likely to interfere with liberty that he would otherwise enjoy."

The parties agree Macomber's transfer to Kansas without a hearing violated the IADA and justified dismissal.  Macomber submits that the district court should have dismissed the indictment against him *with* prejudice.  "[W]e review the district court's decision to dismiss [Macomber's] indictment without prejudice under the IADA for

---

[4]Under the IADA, the United States may return a prisoner in federal custody to the custody of the sending state before trial pursuant to court order if the prisoner and the United States are given "reasonable notice . . . and an opportunity for a hearing."  Id. § 9(2).  In this case, Macomber was not given the opportunity for a hearing before his transfer.

abuse of discretion, and review the factual findings that support the decision for clear error." United States v. McKinney, 395 F.3d 837, 840 (8th Cir. 2004).

### A. Seriousness of the Offense

The seriousness of the offense depends in part upon "the nature of the conduct charged and the potential sentence." Id. at 841. Armed bank robbery endangers human life. The maximum sentence for bank robbery is twenty years, see 18 U.S.C. § 2113(a), and the possession of a firearm during a bank robbery carries a consecutive sentence of, at least, five years, see id. § 924(c)(1)(A). "[T]he district court did not abuse its discretion in concluding this factor supports dismissal without prejudice." McKinney, 395 F.3d at 841.

### B. Facts and Circumstances Leading to Dismissal

"[B]ad faith or a pattern of negligence" by the government may weigh in favor of dismissal with prejudice. Id. Macomber admits "[t]he prosecution . . . did nothing to seek his transfer," but claims "the policies of the United States Marshals and Douglas County Department of Corrections and . . . the district court's unreasonable interpretation of his Application" nonetheless caused his transfer. Macomber explains he filed his "Application for Temporary Restraining Order and Preliminary Injunction" because he was "denied access to legal and writing materials" in the Douglas County Correctional Center. The effect of any inadequate access to legal and writing materials—an assertion that is supported only by Macomber's own allegations—is remote. Macomber has not alleged bad faith by the government or a "pattern of negligence," as discussed in McKinney. Id. Apart from his after-hours motion, neither Macomber nor his standby counsel contacted the district court or the government to inform them he was requesting a hearing before his transfer. The district court did not abuse its discretion by weighing this factor in favor of dismissal without prejudice. See id.

### C. Impact of Reprosecution

Like the district court, we previously have discussed "prejudice" when considering the effect of reprosecution. See id. at 841-42. Macomber asserts the United States "Supreme Court made it clear in [Alabama v. Bozeman, 533 U.S. 146, 154-56 (2001),] that a defendant can suffer prejudice simply as a result of uncertainties generated by interstate detainers." He claims he will face "uncertainties" if he is reprosecuted, namely, he might again be deprived of "legal and writing materials" and "will again have to worry that his pro se pleadings will be misconstrued and that he will be placed on a fast track to transfer whenever he asserts his constitutional rights."

The "uncertainties" in Bozeman concerned the effect of a transfer on inmate treatment and rehabilitation programs, an entirely different type of issue than Macomber's claims of possible future misconduct by the government and the district court. See id. We need not decide whether the sort of "uncertainties" asserted by Macomber ever could constitute prejudice within the meaning of the IADA. Macomber "has presented no evidence, other than his own statements" in his "Application for Temporary Restraining Order and Preliminary Injunction" and on appeal that these problems might occur, such as evidence of a pattern of such alleged misconduct. See McKinney, 395 F.3d at 842. Although there may be situations in which a defendant already serving a lengthy sentence is prejudiced by a dismissal without prejudice, on this record, we cannot say the district court "abuse[d] its discretion in concluding this factor supports dismissal without prejudice." Id.

## III. CONCLUSION

Because the district court did not abuse its discretion in dismissing the indictment without prejudice, we affirm.

_____