# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-1405
_____

United States of America

*Plaintiff - Appellee*

v.

Walter William Cartwright, III

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of North Dakota - Western
_____

Submitted: October 22, 2021
Filed: January 27, 2022
_____

Before LOKEN, WOLLMAN, and BENTON, Circuit Judges.
_____

BENTON, Circuit Judge.

The United States charged Walter William Cartwright, III with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Cartwright was transferred from state to federal custody for arraignment, then transferred back to state custody in violation of the anti-shuttling provisions of the Interstate Agreement on Detainers Act (IADA).

As required by the IADA, the district court[1] dismissed the indictment—without prejudice. Cartwright appeals, arguing it should be *with* prejudice. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

This court reviews the district court's decision to dismiss an indictment without prejudice under the IADA for abuse of discretion, and the factual findings that support the decision for clear error. **United States v. McKinney**, 395 F.3d 837, 840 (8th Cir. 2005).

The government agrees that Cartwright never waived the IADA anti-shuttling provision, and that returning him to state custody violated it. The district court dismissed the indictment pursuant to 18 U.S.C. App. 2, § 2, Art. IV(e). *See* **Alabama v. Bozeman**, 533 U.S. 146, 153-55 (2001) (holding the IADA requires dismissal if the shuttling provision is violated, with no de minimis exception). The only issue is whether the district court erred in dismissing without prejudice.

When the United States is the "receiving State" under the IADA, the court may dismiss an indictment with or without prejudice. **18 U.S.C. App. 2. § 9(1)**. The court must weigh three non-exclusive factors in considering how to dismiss an indictment: "[t]he seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice." *Id.*

A.

"The seriousness of the offense depends in part upon 'the nature of the conduct charged and the potential sentence.'" **United States v. Macomber**, 717 F.3d 607, 611 (8th Cir. 2013), *quoting* **McKinney**, 395 F.3d at 841.

---

[1]The Honorable Daniel M. Traynor, United States District Judge for the District of North Dakota.

The government charged Cartwright with being a felon in possession of a firearm, a charge with a statutory maximum penalty of 10 years' imprisonment and a $250,000 fine. **18 U.S.C. § 924(a)(2).** There is no mandatory minimum for the offense. *Id.* The parties disagree about Cartwright's potential sentence based on the guidelines range. The government contends the guideline range was 100-120 months' imprisonment based on a base offense level of 20, a four-level enhancement, and 37 criminal history points. Cartwright disagrees, contending that the four-level enhancement does not apply, and that much of the conduct adding to his criminal history points occurred after the offense here. This would put him somewhere in a range below 83 months' imprisonment. Acknowledging the different calculations, the district court concluded that, regardless of the suggested sentence, Cartwright would still face a statutory maximum of 10 years.

The crime of being a felon in possession of a firearm is a serious offense for IADA purposes. *See McKinney*, 395 F.3d at 841 (finding one count of felon in possession of a firearm and one of felon in possession of ammunition, each with a 10-year maximum, is a "serious offense"); *United States v. Ward*, 135 F. Appx. 885, 887 (8th Cir. 2005) ("[B]eing a felon in possession of ammunition[] carries a statutory maximum penalty of ten years imprisonment and a $250,000 fine. This type of penalty reflects the seriousness of the charged offense").

Cartwright argues that the district court improperly considered his character, especially its subjective view that Cartwright was a "bad man." The district court in its order never refers to Cartwright as a "bad man" or even uses the phrase. The court considered Cartwright's criminal history because it related to the possible sentence in his case, one of the factors guiding the determination of whether to dismiss an indictment without prejudice. *See Macomber*, 717 F.3d at 611. The district court did not abuse its discretion in ruling that the offense here was serious given Cartwright's prior history and the statutory maximum penalty of the offense.

## B.

The IADA protects prisoners from "uncertainties which obstruct programs of prisoner treatment and rehabilitation." **18 U.S.C. App. 2, § 2, Art. I;** *Culyer v. Adams*, 449 U.S. 433, 448-449 (1981). Article IV(e) prevents prosecutorial abuses of the detainer. *See, e.g.*, **United States v. Kurt**, 945 F.2d 248 (9th Cir. 1991), *referencing* **United States v. Ford**, 550 F.2d 732, 737-39 (2d Cir. 1997), *aff'd sub nom.* **United States v. Mauro**, 436 U.S. 340 (1978). "Bad faith or a pattern of negligence by the government may weigh in favor of dismissal with prejudice." *Macomber*, 717 F.3d at 611, *citing* **McKinney**, 395 F.3d at 841.

Here, Cartwright was transferred due to an administrative error. Cartwright does not allege evidence of prosecutorial bad faith in his transfer—he instead states that the U.S. Marshals "negligently returned Cartwright to state custody." A Supervisory Deputy United States Marshal explained that there has been only one other violation of the IADA in North Dakota in the past three years. There was no evidence of bad faith or negligent pattern here. The district court did not abuse its discretion in determining this factor weighed in favor of dismissal without prejudice.

## C.

Because the violation here was inadvertent, dismissing this case without prejudice does not send a message that violations will be tolerated, as Cartwright contends. Allowing reprosecution in a case where there was no prosecutorial misconduct does not undermine the IADA.

Cartwright contends that he was prejudiced, alleging that further violations of the IADA would continue to make it difficult for him to consult his attorney. The district court determined that possible future violations are not adequate to find prejudice in the present case. As the district court explained, if further violations occur, he will have recourse and a court will take into account the repeat nature of the violation.

Cartwright further alleges prejudice because his mandatory programming at the state penitentiary was interrupted by the violation, conflicting with the IADA's goals of facilitating prisoner treatment and rehabilitation. *See* **18 U.S.C. App. 2, § 2, Art. I.** Cartwright claims he chose not to begin the treatment program due to concerns about failing to complete it if he were returned to federal custody. The district court acknowledged his concerns but ultimately decided his fears were speculative, and that the administration of justice would better be aided by not allowing him to escape liability on a "technical violation." The district court did not abuse its discretion in weighing the third factor.

\* \* \* \* \* \* \*

The dismissal without prejudice is affirmed.

_____